[Civ. No. 21164. Third Dist. Aug. 31, 1982.]

SANDRA DIOLA, Plaintiff and Appellant, v.
STATE BOARD OF CONTROL, Defendant and Respondent.

[redacted]

## COUNSEL

Jordan N. Peckham and Cindy Parker for Plaintiff and Appellant.

George Deukmejian, Attorney General, Michael Franchetti, Chief Deputy Attorney General, Willard A. Shank, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, Seward L. Andrews and Bruce J. Braverman, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**BLEASE, J.**—Sandra Diola (claimant) was released from prison after her conviction for involuntary manslaughter was reversed on appeal. On remand the district attorney's motion to dismiss was granted by the trial court. She presented a claim for injury sustained through erroneous imprisonment to the Board of Control of the State of California (board). (See Pen. Code, § 4900 et seq.)[1] The board rejected the claim. She petitioned the superior court for a writ of mandamus on the grounds the board improperly excluded evidence and failed to make appropriate findings. The petition was denied. She appeals.

### FACTS

Claimant caused her husband's death on September 19, 1974, when she stabbed him in the heart. She was tried for the crime of murder and

---

[1] All references are to the Penal Code unless otherwise specified.

[redacted]

convicted of involuntary manslaughter despite her contention she killed in self-defense. This court reversed the conviction, holding certain cross-examination of claimant had been improper and prejudicial. We determined the case was closely balanced on the question of guilt or innocence and that the improper disparagement of her character may have tipped the balance toward guilt. On remand, the district attorney requested dismissal. The trial court reasoned a retrial would serve no valid purpose. Even if claimant were reconvicted, in light of her previous term of imprisonment, she would soon be released. Accordingly, the motion to dismiss was granted September 3, 1976.

On January 19, 1977, claimant filed a claim for indemnity with the board under the provisions of the act providing indemnity for persons erroneously convicted of a felony. (§ 4900 et seq.) She alleged the circumstances of her criminal trial, incarceration in state prison, and subsequent release. She contended she was innocent of the crime for which she had been imprisoned and did not by act or omission contribute to her arrest or conviction. Appended to her petition were copies of the opinion reversing her conviction, the transcript of the subsequent hearing on dismissal, and a memorandum presenting her arguments, including citations to the trial record purporting to support her factual assertions. No part of the transcript was presented.

On June 3, 1980, the board met to hear the matter. Claimant's attorney requested the matter be referred to the office of administrative hearings for preliminary development of evidence and argument. A board member, Mr. Pelkofer, responded that while the facts might be in dispute, the issue is, did the claim qualify under Penal Code section 4900 and that issue can be decided on the materials previously submitted. After a long digression during which the attorney argued the facts and his contention they demonstrated self-defense, Mr. Pelkofer moved to deny the claim. He observed "[g]iven all the circumstances I think ... there is a possibility that had she been retried she would have been convicted of something but ... I have to make the independent judgment ... in my mind it just doesn't qualify as ... no crime having been committed."

The Attorney General opposed the claim. He argued that this court's decision in *Ebberts v. State Board of Control* (1978) 84 Cal.App.3d 329 [148 Cal.Rptr. 543], required the claimant to show both that no crime was committed and that she did not "commit the underlying act." Pelkofer said had he been sitting on the jury "I suspect she would have

been convicted of murder." However, he went on to say this was beside the point. In his opinion the case did not qualify under the statute. Another board member, Edwin Beach, seconded Mr. Pelkofer's motion with the observation "[t]here was an act committed." The other board member, Susanne Morgan, stated she agreed with her peers and observed claimant's attorney was attempting to retry the case and the board was not prepared to do that. The claim was denied and a letter of rejection was sent to claimant.

She sought and was denied extraordinary relief in the superior court. The trial court issued an alternative writ but, after a hearing, denied the petition, citing *Ebberts*. Claimant appeals from the ensuing judgment.

### DISCUSSION

### I

Penal Code section 4900[2] provides that a person erroneously convicted and imprisoned for a felony may present a claim to the Board of Control for injuries sustained thereby. The claim must be based on grounds the crime was "not committed at all, or, if committed, was not committed by" the claimant. A procedure for filing and establishing the claim is set out. (§ 4901 to § 4906.) Claimant seeks review of the board's compliance with these procedures.

### II

At the outset the board claims the matter is not subject to review pursuant to Code of Civil Procedure section 1094.5, because its authority under section 4904 is limited to a recommendation to the Legislature.

---

[2]Penal Code section 4900 reads: "Any person who, having been convicted of any crime against the State of California amounting to a felony, and having been imprisoned therefor in a State prison of this State shall hereafter be granted a pardon by the Governor of this State for the reason that the crime with which he was charged was either not committed at all or, if committed, was not committed by him, or who, being innocent of the crime with which he was charged for either of the foregoing reasons, shall have served the term or any part thereof for which he was imprisoned, may, under the conditions hereinafter provided, present a claim against the State to the State Board of Control for the pecuniary injury sustained by him through such erroneous conviction and imprisonment."

Code of Civil Procedure section 1094.5 provides for review "for the purpose of inquiring into the validity of any final administrative order or decision made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal ...." The claims procedure (Pen. Code, §§ 4900-4906) at issue provides for the submission of a claim for erroneous conviction and imprisonment to the Board of Control (§ 4900), a hearing (§ 4902), the introduction of evidence (§ 4903), and a decision based upon the evidence (§ 4904). Plainly, these provisions meet the express requirements of section 1094.5.

The board, relying on section 4904 of the Penal Code, seeks to evade this conclusion, reasoning that the outcome of a section 4900 hearing is only a "recommendation" to the Legislature "that an appropriation be made ... indemnifying the claimant ...."; that the Legislature's decision is unreviewable; and that the board's action is therefore quasi-legislative. The authority cited for this *ipse dixit* reasoning is *Worthington* v. *State Bd. of Control* (1968) 266 Cal.App.2d 697 [72 Cal.Rptr. 449, 32 A.L.R.3d 1441].

In *Worthington,* the claimant, pursuant to an analogous statute, sought and was denied review of the amount recommended by the Board of Control *after* the Legislature had appropriated the amount recommended. The claim was based upon the theory the board should have used tort principles to measure the compensation recommended.

Although, as the court noted, the board's role at that point was only ministerial, the court critically distinguished the function of recommending from that of determining liability. The court said a disaffected claimant has recourse only to the Legislature. And, in sweeping language, it said: "For purposes of this program, the Board of Control acts in an advisory staff capacity to the Legislature. If there is dissatisfaction with the procedures followed by the board, the rules adopted by it, or the advice it gives to the Legislature, the remedies are exclusively legislative: the statute can be changed or a meritorious claim can be augmented in the appropriation. There is no provision for any court either to make a direct award of money damages (where the statute creates no liability) or to specify what kind of advice the Board of Control shall render to the Legislature." (*Id.,* at p. 701.)

We do not agree with the sweep of this rationale. It goes far beyond the issue tendered: review of the amount of a recommendation sought after legislative action. Taken at face value, it would preclude judicial review of the board's conformity with the statutory procedures which guarantee the integrity of the board's recommendation. We are not called upon to review the Legislature's action following a board recommendation. Rather, we are asked to determine whether the statutory procedures for arriving at the recommendation have been met. We think the Legislature intended that its laws be carried out and judicial review to that end is required.

*Worthington* makes the board an appendage of the Legislature. That is not the case. The board is quite obviously not a legislative committee and gains no immunity from judicial review thereby. The statutory procedures which it is required to follow to reach a "decision" (recommendation) are quasi-adjudicative, as measured by Code of Civil Procedure section 1094.5.

It is then only the consequence of board action which *Worthington* tells us precludes judicial review. *Worthington* operates on the superficially plausible premise that the dissatisfied claimant has no right or interest in the board's determination; that the claim is redressable only in the unreviewable discretion of the Legislature. The premise is ill-grounded. A favorable recommendation by the board is a valuable property right, regardless of the fact it is only a recommendation. It places the claimant in a clearly favorable position with the Legislature. We presume that, absent fiscal limitations, the Legislature routinely appropriates moneys to satisfy the claims recommended by the board. (See, e.g., 1980-1981 Governor's Budget GG 152-155.) For the lone claimant lacking a favorable recommendation, obtaining relief from the Legislature is manifestly a herculean chore.[3]

The language used in the statute is plain. We discern no intent to grant the board power to award or deny a valuable property right on any basis other than on grounds the evidence adduced at the hearing meets or fails to meet the statutory conditions for favorable recommendation.

---

[3]If we may be forgiven a somewhat inapt analogy, the situation is not dissimilar to the position occupied by a sweepstakes ticket after the first drawing which selects the potential winners and assigns them horses. A claimant with a favorable recommendation is in the race. The value of the ticket is enhanced measurably. Here, the claimant is in an even more favorable position. All of the board's horses can and likely will win.

## III

■ Claimant asserts the board action was premised on the erroneous legal proposition that justifiable homicide is not compensable under section 4900 et seq. While claimant's premise is not undeniable, her suspicion is supported by statements in the record and by the board's adherence to this reading of the statute in its brief on appeal.[4]

The board grounds its claim of statutory ineligibility on the assertion claimant cannot disprove the crime was "committed," one of the conditions for a favorable recommendation required by section 4903,[5] because she admits to homicide. The board relies on our decision in *Ebberts* v. *State Board of Control, supra,* 84 Cal.App.3d 329 [148 Cal. Rptr. 543], which held the perpetrator of a criminal act found not guilty by reason of insanity is not entitled to compensation for erroneous imprisonment. The board extracts from *Ebberts* the rule that *doing* the act for which criminal liability was erroneously affixed precludes relief. We decline to so read *Ebberts.*

In *Ebberts* we reasoned a person relieved of criminal responsibility for criminal conduct by reason of insanity is not "innocent" of the crime in the sense the word is used in Penal Code section 4900 et seq. A person found not guilty because insane either admits the criminal offense or has been found guilty after trial. (See Pen. Code, §§ 1016, 1026.)[6] However, given the statutory measure of section 4900, there is no proper analogy between an insane person and one who acts in self-defense. Self-defense does not *excuse* murder or manslaughter. Murder and manslaughter are defined as *unlawful* killing. (Pen. Code, §§ 187, 192.) A person who kills in *lawful* self-defense does not do the definitional

---

[4]The board also may have decided the evidence provided by claimant did not meet the statutory standard, i.e., did not demonstrate her innocence or lack of culpable conduct in the homicide. (See Pen. Code, § 4903; cf. *Robinson* v. *State Personnel Bd.* (1979) 97 Cal.App.3d 994 [159 Cal.Rptr. 222].)

[5]In order to receive favorable board action on a claim of erroneous imprisonment, claimant must prove three factual propositions. "The claimant must prove the facts set forth in the statement constituting the claim, including [1] the fact that the crime with which he was charged was either not committed at all, or, if committed, was not committed by him, [2] the fact that he did not, by any act or omission on his part, either intentionally or negligently, contribute to the bringing about of his arrest or conviction for the crime with which he was charged, and [3] the pecuniary injury sustained by him through his erroneous conviction and imprisonment." (Pen. Code, § 4903; brackets added.)

[6]Civil culpability, with intentional or negligent conduct as its predicate, is unaffected by the fact of insanity. (Civ. Code, § 41.)

"act" of either crime. A person innocent because of justifiable homicide (Pen. Code, § 197) can demonstrate the crime charged "was not committed at all." (Pen. Code, § 4900.) For that reason, a person erroneously imprisoned for justifiable homicide is not per se ineligible for compensation pursuant to Penal Code section 4900 et seq.[7]

If the rejection of claimant's claim was based on the erroneous premise, the board must reconsider the matter in light of the discussion provided herein.

## IV

■ Claimant next asserts that because of the erroneous premise she was denied the right to present her full case to the board at a hearing before an administrative law judge.[8] Here she falls into two errors. First, she had a right to a hearing only before the board. The board is not *required* to conduct adjudicative hearings by hearing officer. (Gov. Code, §§ 11370.3, 11501, 11502.) Second, it was her burden at the hearing before the board "to introduce evidence in support of the claim" (§ 4903) and to carry the burden of proof. (See Cal. Admin. Code, tit. 2, § 641.) The only evidence presented was that appended to her petition, which did not include a transcript of the criminal trial. If she failed to present her full evidentiary case on the misapprehension there would be another hearing, that is her error and not the board's. She had the only hearing she was entitled to, unless the *sole* reason for the rejection of her request was the board's adherence to the erroneous legal proposition discussed *supra* and the board on remand decides it is appropriate to rehear the matter.

## V

■ The board made no findings to enable us to determine if rejection of the claim was based on the challenged premise. Such findings

---

[7]Of course, even an acquittal on this ground would alone be insufficient for recovery. (See Cal. Admin. Code, tit. 2, § 641.) Innocence might well be predicated upon a reasonable doubt of guilt. But the board's section 4900 determination is a *civil* determination of culpability. To prevail claimant must carry the burden of proof of innocence by a preponderance of the evidence. (*Ibid.*)

[8]Once again claimant's premise is not undeniable. The board may have rejected the suggestion to refer the matter to an administrative law judge on the entirely appropriate ground that no such predigestion of the evidence was desired. (See Gov. Code, §§ 11370.3, 13908.)

are required. (See *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 2]; see also *Robinson* v. *State Personnel Bd., supra*, 97 Cal.App.3d at pp. 1003-1004; cf. *Medlock Dusters, Inc.* v. *Dooley* (1982) 129 Cal. App.3d 496 [181 Cal.Rptr. 80].)

Accordingly, the judgment is reversed and the case remanded to the trial court with directions to issue its peremptory writ of mandate ordering the board to vacate its decision subject to its right to redecide the case and to make findings in conformity with this opinion.

Puglia, P. J., and Regan, J., concurred.