Filed 10/26/15

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| THE PEOPLE, | B261512 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA025300) |
| v. | |
| DANIEL ETHERIDGE, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County. Martin L. Herscovitz, Judge. Affirmed.

Bare & Petroff and Allen M. Petroff for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and John Yang, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Daniel Etheridge appeals from an order denying his motion for a finding of innocence pursuant to Penal Code section 1485.55, subdivision (b).[1] Etheridge contends the trial court erred by denying his motion. We affirm.

## BACKGROUND

In 1996, Etheridge carried a packaged steak from the meat department at Lucky's market, placed it in a Sav-on bag, and slipped the bag with the steak underneath the loading dock door at the back of the store. The security guard who saw Etheridge slip the steak outside the loading dock door next saw Etheridge near a checkstand, carrying a beer in a Lucky's bag. Evidence from a cashier and a cash register tape tended to show that Etheridge paid for the beer. Etheridge left the store with the beer, went to the exterior side of the loading dock door, and picked up the package of meat he had previously slipped beneath the door. Two security guards approached Etheridge and identified themselves as store security. Etheridge ran, and the guards pursued him. As he ran, Etheridge threw the bag containing the steak onto the roof of a nearby Sav-on store. One guard overtook Etheridge, but Etheridge struck the guard on the collar bone with a palm-sized rock. The other guard apprehended Etheridge, who still held the rock in his hand. (*In re Etheridge* (Nov. 22, 2013, B244852) [nonpub. opn.].)

In 1997, a jury convicted Etheridge of second degree robbery, acquitted him of petty theft, and found that he had suffered two prior residential burglary convictions that were alleged pursuant to the "Three Strikes" law and section 667, subdivision (a)(1). The trial court sentenced Etheridge to a third strike term of 35 years to life. Etheridge's conviction was affirmed on appeal. (*People v. Etheridge* (May 28, 1998, B112249 [nonpub. opn.].) Etheridge's appeal did not challenge the sufficiency of the evidence or the accuracy of the jury instructions.

In 2012, Etheridge filed a petition for a writ of habeas corpus in this court, contending that the evidence was insufficient to support his robbery conviction and the

---

[1] Undesignated statutory references are to the Penal Code.

jury was improperly instructed on the law pertaining to robbery. We granted that petition on the grounds the jury was misinstructed and the evidence was insufficient to support Etheridge's robbery conviction. We explained: "Etheridge did not use force or fear to take possession of the steak or to resist attempts by the grocery store security personnel to retake the stolen steak. He abandoned the steak by throwing it on the roof before the guards caught up to him. He used force only *after* he abandoned the steak. Thus, he did not 'rel[y] on force or fear to gain possession or to maintain possession.' ([*People v.*] *Gomez* [(2008)] 43 Cal.4th [249,] 265.) His crimes were assault and theft, but not robbery, yet the trial court's special instruction permitted the jury to convict Etheridge of robbery based upon his use of force to facilitate his escape attempt after he abandoned the steak. As in [*People v.*] *Hodges* [(2013) 213 Cal.App.4th 531], the court's instruction was erroneous because 'it allowed the jury to conclude defendant was guilty of robbery without regard to whether defendant intended to permanently deprive the owner of the property *at the time the force or resistance occurred*.' (*Hodges*, *supra*, 213 Cal.App.4th at p. 543, italics added.) We reject the Attorney General's claim that Etheridge's robbery conviction can rest upon the taking of the beer, given the prosecutor's concession at trial the evidence created a reasonable doubt regarding theft of the beer and the prosecutor's election that the taking of the steak, and not the beer, was the crux of the robbery." (*In re Etheridge*, *supra*, B244852.) Because the parties agreed that the robbery conviction could be reduced to petty theft with a prior, even though the jury acquitted Etheridge of that offense, we modified Etheridge's conviction to petty theft with a prior and remanded for resentencing. (*Ibid.*)

Etheridge then filed, in propria persona, a petition for review, which the California Supreme Court denied. At Etheridge's resentencing hearing on May 7, 2014, the trial court applied the terms of Proposition 36, enacted November 6, 2012, and imposed a second strike term of 6 years, with 6,438 days of actual credit, which the trial court doubled, for credit in excess of 35 years.

3

On September 15, 2014, Etheridge filed a motion for a "finding of factual innocence for the erroneous Robbery conviction" under section 1485.55, subdivision (b). Etheridge argued he had "spent 18 years wrongly imprisoned." At the hearing on the motion, he conceded he was guilty of petty theft, but asked the court to "recognize his factual innocence with regard to the robbery." The trial court denied the motion on the ground Etheridge stood convicted of petty theft with a prior, and section 1485.55 does not "speak to a specific charge," but to "innocence, not innocence of a count or a lesser-related offense. It's to actual innocence." The court also found section 1485.55 analogous to section 851.8 and relied upon a decision applying the latter statute.

Etheridge appealed the trial court's denial of his motion.

**DISCUSSION**

Etheridge contends the trial court erred by applying the standard for purging arrest records under section 851.8 and argues that this court's prior "finding that the robbery charge was legally impossible" satisfies section 1485.55, subdivision (b)'s requirement that he show by a preponderance of the evidence that the crime was not committed.

Section 1485.55, subdivision (b) provides, "If the court grants a writ of habeas corpus concerning a person who is unlawfully imprisoned or restrained on any ground other than new evidence that points unerringly to innocence or actual innocence, the petitioner may move for a finding of innocence by a preponderance of the evidence that the crime with which he or she was charged was either not committed at all or, if committed, was not committed by him or her."[2] The applicability of section 1485.55,

_____

[2] The remainder of section 1485.55 provides, in pertinent part, as follows:

"(a) In a contested proceeding, if the court grants a writ of habeas corpus concerning a person who is unlawfully imprisoned or restrained, or when, pursuant to Section 1473.6, the court vacates a judgment on the basis of new evidence concerning a person who is no longer unlawfully imprisoned or restrained, and if the court finds that new evidence on the petition points unerringly to innocence, that finding shall be binding on the California Victim Compensation and Government Claims Board for a claim presented to the board, and upon application by the person, the board shall, without a

4

subdivision (b) in this case turns on the definition of "the crime with which he or she was charged." Etheridge essentially argues that this phrase means the specific charge itself, i.e., robbery. Alternatively, the meaning of the phrase may be broader, referring to the underlying criminal activity, without regard to the statutory basis of the conviction.

**Principles of statutory construction**

When construing a statute, we first examine the language of the statute to attempt to determine the intent of the Legislature. (*People v. Albillar* (2010) 51 Cal.4th 47, 54–55.) An examination of the language of section 1485.55 does not assist in resolving whether "the crime with which he or she was charged" refers to the specific charge itself or the underlying criminal activity because both are reasonable interpretations of the statutory language. Accordingly, "we must look to additional canons of statutory construction to determine the Legislature's purpose. [Citation.] 'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' [Citation.]" (*McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110.) As between two possible constructions, the more reasonable is favored. (*Freedland v. Greco* (1955) 45 Cal.2d 462, 467.)

We do not construe statutes in isolation, but instead read every statute "'with reference to the entire scheme of law of which it is part so that the whole may be

hearing, recommend to the Legislature that an appropriation be made and the claim paid pursuant to Section 4904. [¶] . . . [¶]

"(c) If the court vacates a judgment pursuant to Section 1473.6, on any ground other than new evidence that points unerringly to innocence or actual innocence, the petitioner may move for a finding of innocence by a preponderance of the evidence that the crime with which he or she was charged was either not committed at all or, if committed, was not committed by him or her.

"(d) If the court makes a finding that the petitioner has proven his or her innocence by a preponderance of the evidence pursuant to subdivision (b) or (c), the board shall, without a hearing, recommend to the Legislature that an appropriation be made and the claim paid pursuant to Section 4904.

"(e) No presumption shall exist in any other proceeding for failure to make a motion or obtain a favorable ruling pursuant to subdivision (b) or (c)."

5

harmonized and retain effectiveness.'" (*People v. Pieters* (1991) 52 Cal.3d 894, 899.)
"To understand the intended meaning of a statutory phrase, we may consider use of the
same or similar language in other statutes, because similar words or phrases in statutes in
pari materia [(that is, dealing with the same subject matter)] ordinarily will be given the
same interpretation." (*In re Bittaker* (1997) 55 Cal.App.4th 1004, 1009.) "When
legislation has been judicially construed and a subsequent statute on a similar subject uses
identical or substantially similar language, the usual presumption is that the Legislature
intended the same construction, unless a contrary intent clearly appears." (*People v.
Lopez* (2003) 31 Cal.4th 1051, 1060.)

**The context, purpose, history, and meaning of section 1485.55**

California has long had a system for compensating exonerated inmates for the time
they spent unlawfully imprisoned. Sections 4900 through 4905 provide for presenting a
claim to the Victim Compensation and Government Claims Board (the board) or, prior to
a 2006 amendment, the Board of Control, which is vested with the power to recommend
to the Legislature that an inmate be compensated if it finds the inmate eligible under the
statutory scheme. Prior to the enactment of Senate Bill No. 618 in 2013, an inmate was
required to introduce evidence to prove his claim, "including the fact that the crime with
which he was charged was either not committed at all, or, if committed, was not
committed by him[;] the fact that he did not, by any act or omission on his part, either
intentionally or negligently, contribute to the bringing about of his arrest or conviction for
the crime with which he was charged[;] and the pecuniary injury sustained by him
through his erroneous conviction and imprisonment." (Former § 4903, added by Stats.
1941, ch. 106, § 15, p. 1130.)

Section 1485.55 was added in 2013 by Senate Bill No. 618, which also amended
some of the other statutes pertaining to compensation for exonerated inmates. (Stats.
2013, ch. 800, § 3, p. 94.) The purpose of the bill was "to streamline and clarify the
process for compensating exonorees," defined as "unlawfully imprisoned or restrained"
persons. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 618 (2013–2014 Reg.

6

Sess.) as amended Apr. 15, 2013, p. B (Sen. Com. on Public Safety Analysis).) In addition, the changes were intended to "'make the system'" "'[l]ess expensive by saving taxpayer money spent on years of costly litigation where innocence has already been proven.'" (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 618 (2013–2014 Reg. Sess.) as amended June 27, 2013, p. 6 (Assem. Com. on Public Safety Analysis).) As part of the streamlining process, the Legislature eliminated the second element of proof previously required by section 4903, i.e., that the claimant did not contribute to bringing about his arrest or conviction, and added subdivision (b) to section 4903 to make the "factual findings and credibility determinations establishing the court's basis for granting a writ of habeas corpus, a motion for new trial pursuant to Section 1473.6, or an application for a certificate of factual innocence as described in Section 1485.5" binding on the board.

The language in controversy in this case was only added to the bill in the Assembly on September 3, 2013, after the second reading. (Assem. Amend. to Sen. Bill No. 618 (2013–2014 Reg. Sess.) Sept. 3, 2013.) The Assembly chose to insert the same language the Legislature had previously used in related statutes regarding compensation for exonerated inmates. For example, the same language has been part of section 4900 since it was enacted in 1941. (Stats. 1941, ch. 106, § 15, p. 1130.) Section 4900 now provides, in pertinent part: "Any person who, having been convicted of any crime against the state amounting to a felony and imprisoned in the state prison . . . for that conviction, is granted a pardon by the Governor for the reason that *the crime with which he or she was charged was either not committed at all or, if committed, was not committed by him or her*, or who, being innocent of the crime with which he or she was charged for either of the foregoing reasons, shall have served the term or any part thereof for which he or she was imprisoned . . . may, under the conditions provided under this chapter, present a claim against the state to the [board] for the pecuniary injury sustained by him or her through the erroneous conviction and imprisonment . . . ." (Italics added.)

Section 4903, which sets forth the matters a claimant must prove at a hearing before the claims board, has also utilized the same language since its enactment in 1941. (Stats. 1941, ch. 106, § 15, p. 1130.) Section 4903, subdivision (a) now provides: "At the hearing the claimant shall introduce evidence in support of the claim, and the Attorney General may introduce evidence in opposition thereto. The claimant shall prove the facts set forth in the statement constituting the claim, including the fact that *the crime with which he or she was charged was either not committed at all, or, if committed, was not committed by him or her*, and the pecuniary injury sustained by him or her through his or her erroneous conviction and imprisonment." (Italics added.) Similarly, the language added to Senate Bill No. 618 by the Assembly mirrors language that has been in section 4904 since its 1941 enactment: "If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant . . . ."

This identical language, as used in section 4900 and 4903, was construed in *Ebberts v. State Board of Control* (1978) 84 Cal.App.3d 329 (*Ebberts*), in which a former inmate sought compensation for time he spent in prison prior to an appellate reversal and retrial on the sanity phase of his trial, at which he was found not guilty by reason of insanity. (*Id*. at pp. 331–332.) The board denied his claim for compensation. Ebberts contended that, in light of the insanity verdict, "the crimes with which he was charged were not committed." (*Id.* at p. 333.) The appellate court disagreed: "We interpret the phrase 'not committed at all' in 4900 and 4903 to mean the claimant can show the board that he was 'innocent' in the sense that *he did not do the acts which characterize the crime*. This is the only sensible meaning we believe we can give to the use of the term 'innocent' as used in Penal Code section 4900 and also as used in board rule 641. Ebberts did not contend before the board nor does he contend here that *he did not commit the acts which are elements of the crime*." (*Ebberts*, at p. 335, italics added.)

Absent a clear indication to the contrary, we presume that the Legislature's incorporation of the identical language in section 1485.55 demonstrated that it intended

8

the language to be construed in the same manner as the *Ebberts* court construed the identical language in the related claims statutes, sections 4900 and 4903.[3] We therefore examine legislative history materials in search of any contradictory or otherwise enlightening expressions of intent.

Throughout Senate Bill No. 618's journey through the Legislature, committee and floor analysis reports referred to "exoneration," "persons who have been exonerated," "exonorees," "factual innocence," "actual innocence," "unlawfully imprisoned" persons, "wrongfully convicted and unlawfully imprisoned individuals," "the wrongfully convicted," "wrongful incarceration," "men and women [who] prove their innocence," and compensation for "time spent illegally behind bars" or "unlawful imprisonment." (Sen. Com. on Public Safety Analysis, *supra*, at pp. B, I, J, K, N; Sen. Appropriations Com., Analysis of Sen. Bill No. 618 (2013–2014 Reg. Sess.) as amended Apr. 15, 2013, pp. 1, 2, 4; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 618 (2013–2014 Reg. Sess.) as amended Apr. 15, 2013, pp. 4, 6, 7; Assem. Com. on Public Safety Analysis, *supra*, at pp. 1, 6, 7, 8, 10; Assem. Com. on Appropriations, Analysis of Sen. Bill No. 618 (2013–2014 Reg. Sess.) as amended June 27, 2013 (Assem. Appropriations Com. Analysis); Sen. Rules Com., Off. of Sen. Floor Analyses, unfinished business analysis of Sen. Bill No. 618 (2013–2014 Reg. Sess.) as amended Sept. 3, 2013, pp. 1, 9 (Senate unfinished business analysis).)

In the "Comments" section of its analysis of Senate Bill No. 618, the Assembly Committee on Public Safety noted that the California Commission on the Fair Administration of Justice Report and Recommendations addressed "some of the obstacles

---

[3] We note that section 851.8, upon which the trial court relied, pertains to sealing criminal records, not obtaining compensation for unlawful imprisonment, and does not utilize the language of sections 1485.55, subdivision (b), 4900, 4903, and 4904. It instead provides for a finding of "factual innocence" upon proof that "no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made." (§ 851.8, subd. (b).)

faced by persons who have established their innocence after conviction of a crime, in gaining access to post-conviction relief, achieving reintegration into society and gaining compensation for their wrongful convictions. The report states that 'compensation should be limited to those who have been found innocent of the crime or crimes for which they were convicted and imprisoned, not because of procedural errors in their trials.'" (Assem. Com. on Public Safety Analysis, *supra*, at p. 8, italics added.) In the "Comments" section of its analysis of Senate Bill No. 618, the Assembly Appropriations Committee quoted the California Innocence Project: "'Individuals who have established their actual innocence to the criminal justice system, whose conviction would not have been reversed unless they proved their innocence to the judge, have been denied claims by the [board] . . . .'" (Assem. Appropriations Com. Analysis, *supra*, Comments, ¶ 4.)

Nothing in the history of Senate Bill No. 618 suggests the Legislature intended the language in section 1485.55, subdivision (b) to have a different meaning than the same language used in sections 4900, 4903, and 4904, or that the Legislature did not intend that language to be construed as in *Ebberts*, *supra*, 84 Cal.App.3d at page 335. Indeed, a number of the legislative committee reports pertaining to Senate Bill No. 618 expressly refer to the use of the language in question in the existing claims statutes. For example, after the Assembly amended the bill to include the language in issue, the Senate Rules Committee, Office of Senate Floor Analyses, reported that "Existing law" provided, inter alia, "that any person who, having been convicted of a crime and imprisoned in the state prison, is granted a pardon by the Governor because the crime with which he/she was charged either did not occur; or if it did occur, was not committed by him/her; or who is innocent of the charges for either of the foregoing reasons, and who has served any part of the term for which imprisoned may present a claim . . . to the [board] for the pecuniary injury sustained through the wrongful conviction and imprisonment." (Senate unfinished business analysis, *supra*, p. 3.)

Given *Ebberts* and the legislative history of Senate Bill No. 618, we conclude the Legislature intended a defendant to be entitled to a finding of innocence under section

1485.55, subdivision (b) only if he or she can demonstrate by a preponderance of the evidence that he or she was "innocent" in the sense that he or she did not perform the acts "that characterize the crime" or are elements of the crime, and was therefore "wrongfully convicted and unlawfully imprisoned." This nonetheless leaves open the question of whether "the crime" pertains to the specific charge or the underlying acts of criminality. In most cases of exoneration, the distinction is unlikely to make any difference. To the extent it does, as in this case, it would seem to be more consistent with the legislative intent of compensating former inmates for wrongful conviction and unlawful imprisonment to construe "the crime with which he or she was charged" as pertaining to the specific charge, with the significantly limiting requirement that the claimant have been unlawfully imprisoned. Where, as in this case, a conviction is modified to reflect conviction of another offense, the defendant would not have been unlawfully imprisoned for that period of time he or she would have served for the offense as modified.

**Etheridge is not entitled to a finding of innocence**

In the present case, disregarding the uncharged assault upon the security guard, Etheridge committed only a petty theft and was wrongfully convicted of robbery. He was factually and legally innocent of robbery, but guilty of petty theft with a prior (§ 666). Under the Three Strikes law as it existed at the time of Etheridge's conviction, he was subject to a sentence of 25 years to life if convicted of petty theft with a prior. Given the assault on the security guard with a rock and the absence of any evidence in the record suggesting Etheridge fell outside the spirit of the Three Strikes law, it is likely Etheridge would have been sentenced to 25 years to life in prison. The section 667, subdivision (a)(1) enhancements would have been inapplicable, however, because petty theft with a prior is not a serious felony. Etheridge asserted at the hearing on his motion pursuant to section 1485.55 that he had been incarcerated for 18 years, which is less than the minimum 25-year term of the indeterminate third-strike sentence he likely would have received had he been convicted of petty theft with a prior instead of robbery.

11

As of November 7, 2012, the effective date of Proposition 36, Etheridge could have petitioned for resentencing under the provisions of section 1170.126, but the trial court would have had discretion to deny his petition if it determined that resentencing him would have posed "an unreasonable risk of danger to public safety," based upon factors including his criminal history, his disciplinary record in prison, and "[a]ny other evidence the court, within its discretion, determines to be relevant." (§ 1170.126, subds. (f), (g).) Thus, had he been convicted of the correct offense, he could still be imprisoned at this time, whereas, as a result of the incorrect conviction and this court's grant of habeas corpus, the trial court freed him on May 7, 2014.

Accordingly, we cannot conclude Etheridge was unlawfully imprisoned, and we therefore conclude he is not entitled to a finding of innocence under section 1485.55, subdivision (b). He is nonetheless free to present a claim to the board under section 4900 et seq. As provided in section 1485.55, subdivision (e), his failure to obtain a favorable ruling under subdivision (b) will not give rise to any presumption before the board that his claim lacks merit.

**DISPOSITION**

The order is affirmed.

CERTIFIED FOR PUBLICATION


                                         LUI, J.

We concur:


ROTHSCHILD, P. J.


CHANEY, J.


12